IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No.: 1:21-cv-784

| | |
|---|---|
| WIRELESS SYSTEMS SOLUTIONS, LLC, LASLO GROSS and SUSAN GROSS )<br><br>Plaintiffs, )<br><br>v. )<br><br>PHILADELPHIA INDEMNITY INSURANCE COMPANY, )<br><br>Defendants. ) | **COMPLAINT** |

COME NOW Plaintiffs, Wireless Systems Solutions, LLC, Laslo Gross and Susan Gross (collectively referred to as "Wireless Plaintiffs"), by and through counsel, and bring this Complaint for Declaratory Judgment and damages alleging as follows:

PRELIMINARY STATEMENT

1. Pursuant to 28 U.S.C. §§ 2201 and 2202, Plaintiffs seek a declaratory judgment and adjudication concerning the rights, obligations, and liabilities of the parties with respect to coverage under certain insurance policies issued by Philadelphia Indemnity Insurance Company ("PIIC") to Wireless Systems Solutions, LLC ("Wireless"), as a result of claims for misappropriation of trade secrets, misappropriation of intellectual property, misappropriation of copyright and/or trade dress and other claims as more specifically set forth in an underlying lawsuit and resulting arbitration entitled, *SmartSky Networks, LLC v. Wireless Systems Solutions, LLC* (the

"Underlying Matter"). Plaintiffs contend that PIIC owed a primary duty to defend and indemnify Wireless Plaintiffs against the claims made in the Underlying Matter. Plaintiffs made demand upon PIIC to defend and/or indemnify them against the claims made in the *SmartSky* Underlying Matter, and PIIC refused to defend and/or indemnify as required under one or more of its policies. In addition to declaratory judgment, Plaintiffs also seek damages for breach of contract.

## Jurisdiction

2. Jurisdiction over the claims contained herein is invoked pursuant to 28 U.S.C. § 1332 (a)(1) and (c) and §§ 2201 and 2202 in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum of $75,000.00.

## Venue

3. This action properly lies in the United States District Court for the Middle District of North Carolina pursuant to 28 U.S.C. § 1391(b) since a substantial part of the events giving rise to this declaratory judgment occurred in this judicial district. In particular, the contract that formed the basis for the Underlying Matter was entered into in Durham County, the initial Complaint in the Underlying Matter was filed in the Middle District of North Carolina, and the principal place of business for Wireless Systems Solutions, LLC is located at 630 Davis Drive, Morrisville, North Carolina, which is in Durham County.

## Parties

4. Wireless Systems Solutions, LLC is a limited liability company formed

under the laws of the State of North Carolina, with its principal place of business at 630 Davis Drive, Morrisville, North Carolina. At all times relevant to this action and the Underlying Matter, Laslo Gross acted as the chief executive of Wireless Systems Solutions, LLC, and Susan Gross was a member manager. Laslo Gross and Susan Gross reside at 102 Ripplewater Lane, Cary, North Carolina.

5. PIIC is a Pennsylvania insurance company with a principal place of business at One Bala Plaza, Suite 100, Bala Cynwyd, Pennsylvania 19004.

6. This Court has personal jurisdiction over PIIC under N.C. Gen. Stat. § 1-75.4(10) since this matter arises out of contracts of insurance sold by PIIC to Wireless Systems Solutions, LLC as named insured, which was at all relevant time periods a North Carolina limited liability company doing business in North Carolina.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Underlying Claims*

7. This Complaint arises out of an Underlying Matter entitled *SmartSky Networks, LLC v. Wireless Systems Solutions, LLC,* originally pending in the Middle District of North Carolina under case number 1:20-cv-00834 and the ensuing Arbitration Matter that included additional claims between the parties entitled *SmartSky Networks, LLC v. Wireless Systems Solutions, LLC* under American Arbitration Association ("AAA") case number 01-20-0014-8647. True copies of the Complaint (Ex. A), the Statement of Claims (Ex. B), and the Amended Statement of Claims (Ex. C) are annexed hereto as Exhibits A, B and C respectively.

9. In the Underlying Matter, it was alleged that the Wireless Plaintiffs

3

engaged in activities involving the use of SmartSky's information and property to develop, market and offer to sell competing products. The underlying claims against the Wireless Plaintiffs included claims for misappropriation of trade secrets under federal and state law, conspiracy, unfair and deceptive trades practices, conversion, and false advertising. Claims for breaches of contracts were also asserted against Wireless. The specific allegations in the Underlying Matter are set forth in the Complaint (Ex. A), Statement of Claims (Ex. B) and Amended Statement of Claims (Ex. C) and are incorporated herein by reference.

*The Policies*

10. At all times relevant to this matter, Wireless purchased certain insurance policies for which it paid premiums to the Defendant, PIIC.

11. Defendant PIIC issued the following relevant policies ("the PIIC policies") to Plaintiff Wireless Systems Solutions, LLC as the named insured.

> (a) Commercial General Liability policy number PHPK2067435 with policy with effective dates from December 1, 2019 to December 1, 2020 ("the 2019-2020 CGL policy" [attached as Exhibit D]);
>
> (b) Commercial General Liability policy number PHPK220993 with effective dates from December 1, 2020 to December 1, 2021 ("the 2020-2021 CGL policy" [attached as Exhibit E]);
>
> (c) Commercial Umbrella policy PHUB702312 with effective dates from December 1, 2019 to December 1, 2020 ("the 2019-2020 UMB policy" [attached as Exhibit F]);
>
> (d) Commercial Umbrella policy PHUB747565 with effective dates from December 1, 2020 to December 1, 2021 ("the 2020-2021 UMB policy" [attached as Exhibit G]); and

4

(e) Technology Errors and Omissions PHPK2067441 with effective dates from December 1, 2019 to December 1, 2020 ("the 2019-2020 Tech E&O policy" [attached as Exhibit H]).

(f) Technology Errors and Omissions PHPK2209936 with effective dates from December 1, 2020 to December 1, 2021 ("the 2019-2020 Tech E&O policy" [attached as Exhibit I]).

12. Laslo Gross was employed by and acted as the chief executive officer of Wireless Systems Solutions, LLC, and Susan Gross was employed by and a member manager of Wireless, with both individuals being so employed before December 1, 2019 and continuously through the current time. As such, Laslo Gross and Susan Gross were insureds under the PIIC policies.

13. Both the 2019-2020 CGL policy and the 2020-2021 CGL policy (collectively referred to as "the CGL policies") have coverage limits of $1,000,000 per occurrence, $1,000,000 for personal and advertising injury, $2,000,000 for products completed operations aggregate, and $2,000,000 general aggregate limit (other than products-completed operations).

14. The CGL policies contain the following insuring provisions:

**SECTION I –COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured become legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
   ***

## COVERAGE B - PERSONAL AND ADVERTISING INJURY

1. **Insuring Agreement**
    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

15. "Personal and advertising injury" is defined in the CGL policies as follows: "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
> d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
> e. Oral or written publication, in any manner, of material that violates a person's right of privacy;
> f. The use of another's advertising idea in your "advertisement"; or
> g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(Ex. D and Ex. E, p. 15 of 16)

16. The Underlying Matter contains allegations of facts that implicate coverage under the insuring clause of Coverage A and/or Coverage B of the CGL policies.

17. Both the 2019-2020 UMB policy (Ex. F) and the 2020-2021 UMB policy (Ex. G) (collectively referred to as "the UMB policies") have coverage limits of $4,000,000 per occurrence, $4,000,000 for personal and

6

advertising injury, $4,000,000 for products completed operations aggregate, and $4,000,000 general aggregate limit (other than products-completed operations).

18. The UMB policies contain the following insuring provisions:

**SECTION I - COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**
We will pay on behalf of the insured the "ultimate net loss" in excess of the "applicable underlying limit," whether or not collectible, which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.
\*\*\*
**2. Defense of Claims or Suits and Supplementary Payments**
a. We will have the right and duty to defend the insured against any "suit" seeking damages which are payable under COVERAGES A or B including damages wholly or partly within the "retained limit," but which are not payable by a policy of "underlying insurance," or any other available insurance because:
   (1) Such damages are not covered; or
   (2) The "underlying insurance" has been exhausted by the payment of claims.

(Ex. F and Ex. G, pp. 1-2 of 29)

19. The Underlying Matter contains allegations of facts that implicate coverage under the insuring clause of Coverage A and/or Coverage B of the UMB policies.

20. Both the 2019-2020 Tech E&O policy (Ex. H) and the 2020-2021 Tech E&O policy (Ex. I) (collectively referred to as "the Tech E&O policies") have coverage limits of $5,000,000 for each claim and $5,000,000 in the aggregate and are retroactive to 12/01/2019.

21. The Tech E&O policies contain the following insuring provisions:

**SECTION I — COVERAGE**
**A. Insuring Agreements**
    **1. Technology Coverage**
We shall pay on your behalf all sums, not exceeding the limits of insurance and in excess of the applicable deductible set forth in Item 4. of the Declarations, for which you shall become legally obligated to pay as damages resulting from any claim first made against you during the policy period or any subsequent extended reporting period, arising out of a **wrongful incident** committed after the retroactive date stated in ITEM 4. in the Declarations and prior to the end of the policy period as a direct result of your technology professional services provided that:
    a. The wrongful incident occurs in the coverage territory;
    b. The wrongful incident occurs after the retroactive date shown in the Declarations and prior to the end of the policy period; and
    c. (1) The claim is first made against an insured during the policy period and reported to us in accordance with SECTION V — GENERAL CONDITIONS, C. Notice & Claim Reporting Provisions;
    (2) Prior to the inception date of this coverage form, no executive officer had knowledge of or should have known of any circumstances which might have resulted in a claim; and
    (3) The wrongful incident or any affiliated wrongful incident has not been the subject of any notice given under any previous coverage form.

Subject to any applicable limit of insurance, we will also pay claim expenses in connection with such covered claim.

(Ex. H and Ex. I, p. 1 of 17.)

22. The term "wrongful incident" is defined in the Tech E&O policies as follows:

EE. **Wrongful incident** means any of the following with respect to your technology professional services; your product; media and advertising; or network security and privacy regulatory responsibilities:

1. Negligent acts, errors or omissions;

2. Failure to perform the function or serve the intended purpose;
3. Breach of warranties or representations relating to fitness, quality, suitability or performance;
4. Failure to prevent unauthorized access to unauthorized use of a client's network by a third-party;
5. Failure to prevent identity theft by a third-party;
6. Failure to prevent introduction of malicious code by a third-party;
7. Inability of an authorized third-party to gain access to client's network, including denial service or malicious code;
8. Unintended transmission by you to a client of any malicious code;
9. Defamation, libel, slander, product disparagement or trade libel;
10. Invasion of an individual's right of privacy or publicity, including false light, intrusion upon seclusion, commercial misappropriation of likeness, and public disclosure of private facts;
11. Plagiarism or misappropriation of ideas under an implied contract;
12. Infringement, misappropriation or violation of any copyright, trademark, trade name, trade dress, title, slogan, service mark or service name;
13. Domain name infringement or improper deep-linking or framing; or
14. Piracy, but only when it directly relates to infringement of copyright or trademark.

(Ex. H and Ex. I, pp. 7-8 of 17)

23. The Underlying Matter contains allegations of facts that implicate coverage under the insuring clauses of the Tech E&O policies.

24. Wireless timely tendered the defense of the claims in the Underlying Matter to PIIC for defense and/or indemnity under the policies it issued, including the CGL policies, the UMB policies and the Tech E&O policies.

25. PIIC owed a duty to defend Wireless Plaintiffs against the allegations in the Underlying Matter, and to provide indemnity coverage for all or part of the damages claimed in the Underlying Matter.

26. PIIC wrongfully denied coverage including any duty to defend Wireless Plaintiffs under all the policies.

9

27. Wireless Plaintiffs were forced to incur costs, attorneys' fees and expenses for their own defense against the allegations in the Underlying Matter and incurred at least $450,000 in legal fees and expenses in doing so. Further an award of $10 million was entered against Wireless Systems Solutions, LLC, and an award of $2,488,892.04 in attorneys' fees, expenses, and costs was entered against Wireless Systems Solutions, LLC, Laslo Gross and Susan Gross in the Underlying Matter

<u>COUNT I</u>
(Breach of Contract)

28. Plaintiffs repeat and incorporate by reference the allegations of the foregoing paragraphs of the Complaint as if fully set forth herein.

29. PIIC was contractually obligated to defend and/or indemnify Wireless Plaintiffs against the claims alleged in the Underlying Matter.

30. The damages sought by SmartSky in the Underlying Matter included claims for "property damage" caused by an "occurrence" under Coverage A and/or for "personal and advertising injury" under Coverage B of the CGL policies and/or the UMB policies. Alternatively, or in addition to, the presence of coverage under the CGL and/or UMB policies, the allegations in the Underlying Matter implicated coverage under the Tech E&O policies.

31. PIIC wrongfully denied coverage under the CGL and UMB policies by letter dated May 28, 2021 and wrongfully denied coverage under the Tech E&O policies by letter dated May 7, 2021.

32. PIIC's denials of coverage and its failure to defend Wireless Plaintiffs was a breach of its contractual obligations under one or more of the policies

10

purchased by Wireless.

33. As a direct and proximate result of PIIC's breaches of its contractual obligations, Wireless Plaintiffs were forced to incur costs, attorneys' fees and expenses for their own defense in an amount exceeding $450,000, as well as other damages, including $10 million in damages awarded against Wireless Solutions Systems, LLC in the Underlying Matter and almost $2.5 million in attorneys' fees, expenses, and costs awarded to the prevailing party in the Underlying Matter.

34. PIIC is liable to Wireless Plaintiffs for monetary damages as a result of the breaches of its insurance contracts with Wireless for the full amount of defense costs, attorneys' fees and expenses incurred by Wireless Plaintiffs in defense of the Underlying Matter, as well as for any damages, costs and fees that were awarded against Wireless Plaintiffs in the Underlying Matter, plus interest at the legal rate from the date of PIIC's breaches of its contracts.

## COUNT II
(Declaratory Relief against PIIC)

35. Plaintiffs repeat and incorporate by reference the allegations of the foregoing paragraphs of the Complaint as if fully set forth herein.

36. Wireless Plaintiffs were entitled to be defended and indemnified in whole or in part under one or more of the policies purchased from PIIC.

37. Wireless Plaintiffs tendered the Underlying Matter to PIIC for defense and/or indemnity under the Tech E&O policies and under the CGL and UMB policies purchased from PIIC.

38. PIIC wrongfully denied coverage under all the policies and failed to

defend Wireless Plaintiffs in connection with the Underlying Matter.

39. Wireless Plaintiffs incurred legal fees and expenses in the amount of at least $450,000.00 in defending against the claims in the Underlying Matter.

40. The allegations in the Underlying Matter implicated at least one or more policy coverages for defense by PIIC. There was no valid basis for PIIC's denial of coverage under all the policies.

41. PIIC is obligated to pay Wireless Plaintiffs for all defense costs, attorneys fees and expenses they incurred in connection with the defense of the Underlying Matter.

42. PIIC is also obligated to indemnify Wireless Plaintiffs for any damages, costs and fees that were awarded against Wireless Plaintiffs in the Underlying Matter.

43. An actual and justiciable controversy exists between PIIC and Wireless Plaintiffs regarding PIIC's obligations under the PIIC policies.

44. Wireless Plaintiffs request a declaratory judgment that they are entitled to coverage under one or more of the PIIC policies for all defense costs, attorneys' fees and expenses they incurred, as well as for any damages, costs and fees that were assessed against Wireless Plaintiffs in the Underlying Matter.

## COUNT III
(Bad Faith)

45. Plaintiffs repeat and incorporate by reference the allegations of the foregoing paragraphs of the Complaint as if fully set forth herein.

46. Although the Underlying Matter clearly included claims and

allegations that were potentially covered under one or more of the policies purchased by Wireless from PIIC, Defendant/PIIC nevertheless wrongfully denied coverage and refused to defend or indemnify Wireless Plaintiffs.

47. PIIC acted in bad faith in at least one or more of the following ways:

   a. Unreasonably denying coverage and refusing to defend Plaintiffs despite the absence of a legitimate, reasonable or arguable basis for denial, including misrepresenting the circumstances of the tender by Wireless in order to attempt to justify their denial;

   b. Unreasonably refusing to defend Wireless Plaintiffs in the Underlying Matter which was a breach of the policy terms and thus subjecting PIIC to an obligation to indemnify Wireless Plaintiffs for the full amount of the awards against them in the Underlying Matter;

   c. Otherwise acting in bad faith in the denial and handling of Plaintiffs' claims for defense and indemnity under the policies purchased by Wireless.

48. The actions and/or failures to act on the part of PIIC were willful, wanton, malicious and without justification or excuse to further the improper objectives of PIIC and with conscious intent to injure Plaintiffs and/or with disregard for the interests of Plaintiffs to the prejudice and detriment of Plaintiffs all in violation of common and statutory law.

13

Case 1:21-cv-00784-TDS-LPA   Document 1   Filed 10/11/21   Page 13 of 16

49. As a result of the bad faith conduct of PIIC, Plaintiffs are entitled to recover, in addition to compensatory damages, punitive damages in an amount to be determined at trial, as well as prejudgment interest as allowed by law.

## COUNT IV
(Unfair and Deceptive Trade Practices)

50. Plaintiffs repeat and incorporate by reference the allegations of the foregoing paragraphs of the Complaint as if fully set forth herein.

51. As an alternative to the claims for Bad Faith referenced in Count III, Plaintiffs contend that PIIC has violated at least one or more of the provisions of N.C. Gen. Stat. §58-63-15 (11), including, but not limited to:

   a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

   b. Otherwise acting in violation of Chapter 58 of the North Carolina General statutes in the denial and handling of Plaintiffs' claims for defense and indemnity under the policies purchased by Wireless.

52. Such conduct on the part of the PIIC constitutes unfair and deceptive acts within the meaning of N.C. Gen. Stat. §75-1.1 as a matter of law.

53. PIIC has also committed independent acts constituting unfair and deceptive trade practices in violation of N.C. Gen. Stat. §75-1.1 *et seq.* by failing to attempt in good faith to effectuate a prompt and fair claim settlement of Plaintiffs' claims under the PIIC policies, and/or in other ways that will be shown at trial.

14

Case 1:21-cv-00784-TDS-LPA   Document 1   Filed 10/11/21   Page 14 of 16

54. At all relevant times, the conduct of PIIC was in or affecting commerce in the State of North Carolina within the meaning and purview of Chapter 75 of the North Carolina General Statutes.

55. As a result of the conduct of PIIC, Plaintiffs are entitled to treble damages and attorneys' fees incurred in pursuing this coverage action pursuant to N.C. Gen. Stat. §§75-16 and 75-16.1.

WHEREFORE, Plaintiffs respectfully request that the Court enter the following relief:

(1) That the Court declare and decree that PIIC owed a duty to defend the Wireless Plaintiffs under one or more of the policies it issued, and that by failing to defend, PIIC breached its contract(s) with Wireless, entitling Plaintiffs to damages for the full amount of the costs, attorneys fees and expenses incurred in defending against the claims in the Underlying Matter, as well as for all damages, costs and fees that were awarded against Wireless Plaintiffs in the Underlying Matter;

(2) That the Court declare and decree that PIIC wrongfully denied coverage and failed to defend the Wireless Plaintiffs, entitling Plaintiffs to be compensated for all costs, attorneys' fees and expenses incurred in defending against the claims in the Underlying Matter as well as for any damages, fees and/or costs that were awarded against Plaintiffs in the Underlying Matter;

(3) That Plaintiffs be awarded punitive damages pursuant to N.C. Gen. Stat. §1D, or, alternatively, be awarded treble damages and attorneys' fees

15

pursuant to N.C. Gen. Stat. §§75-16 and 75-16.1;

(4) That the Court award prejudgment interest to Plaintiffs at the legal rate on all damages from the date of the breach(es) by PIIC;

(5) That the costs of this action be taxed against PIIC;

(6) That Plaintiffs have interest on all amounts recovered as provided by law;

(7) That Plaintiffs have a trial by jury on all issues so triable; and

(8) That Plaintiffs have such other and further relief as the Court deems just and proper.

This the 11th day of October, 2021.

PINTO COATES KYRE & BOWERS, PLLC

/s/ Richard L. Pinto
Richard L. Pinto
N.C. State Bar #9412
rpinto@pckb-law.com

/s/ Deborah J. Bowers
Deborah J. Bowers
N.C. State Bar #24937
dbowers@pckb-law.com

*Attorneys for Plaintiffs*

3203 Brassfield Road
Greensboro, NC 27410
Telephone: (336) 282-8848
Facsimile: (336) 282-8409